**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| CHARLIE GILBERT GILLISPIE, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 1:20CV507 |
| | ) | |
| WARDEN WATSON, | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM OPINION AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

Petitioner, a prisoner of the State of North Carolina, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (the "Petition"). (Docket Entry 2.) Respondent has moved for summary judgment (Docket Entries 7, 8), and Petitioner has responded in opposition (Docket Entry 10). For the reasons that follow, the Court should grant Respondent's Motion for Summary Judgment.

## I. Background

On October 31, 2013, a jury in the Superior Court of Rowan County found Petitioner not guilty of assault with a deadly weapon but guilty of second degree sexual offense, second degree kidnapping, and assault inflicting physical injury by strangulation in cases 11 CRS 53241 and 53242 (see Docket Entry 2, ¶¶ 1, 2, 4-6; see also Docket Entry 8-3 at 66-69), whereupon Petitioner pleaded guilty to attaining habitual felon status in case 13 CRS 1777 (see Docket Entry 2, ¶ 5; Docket Entry 8-3 at 70-73).[1] The trial court

---

[1] Throughout this Recommendation, pin citations refer to the page numbers in the footer appended to those materials at the time of their docketing in the CM/ECF system. When quoting from the parties' filings, this Recommendation will use standard capitalization conventions.

consolidated the convictions and sentenced Petitioner to 146 to 185 months in prison, ordered him to register as a sex offender for 30 years, and issued a permanent no-contact order protecting the victim. (See Docket Entry 2, ¶ 3; see also Docket Entry 8-3 at 74-82.)

Petitioner appealed to the North Carolina Court of Appeals, (see Docket Entry 2, ¶¶ 8, 9; see also Docket Entry 8-3 at 83-86) and, in a published opinion, that court found no error in Petitioner's convictions and sentence, but remanded to correct a clerical error in the judgment, State v. Gillespie, 240 N.C. App. 238, 771 S.E.2d 785 (2015).[2] Petitioner, proceeding through counsel, then filed a petition for discretionary review ("PDR") in the North Carolina Supreme Court (see Docket Entry 2, ¶ 9(g)), which that court subsequently denied, State v. Gillespie, 368 N.C. 353, 777 S.E.2d 62 (2015).[3]

Petitioner thereafter filed a pro se motion for appropriate relief ("MAR") with the trial court (see Docket Entry 8-6), arguing

---

[2] The above-cited decision (like some other materials cited hereafter) reflects Petitioner's last name as "Gill**e**spie," but, because Petitioner's filings in the instant action spell his name "Gill**i**spie" (Docket Entry 2 at 1; Docket Entry 10 at 1), the undersigned has referred to Petitioner by the last name of Gillispie.

[3] Petitioner filed a pro se "Motion for Production of Exculpatory Evidence" in the trial court (Docket Entry 8-4), which that court denied without prejudice due to the pendency of Petitioner's PDR on direct appeal in the North Carolina Supreme Court (see Docket Entry 8-5 at 2-3). According to Respondent, Petitioner then filed a series of three petitions for a writ of certiorari in the North Carolina Court of Appeals in which he "generally requested th[at] court to issue the writ to overrule its decision on direct appeal and to examine newly raised challenges to the sufficiency of the evidence and the sufficiency of the trial court's jury instructions." (Docket Entry 8 at 2.) Respondent did not include copies of those certiorari petitions in the record, because they "raised challenges unrelated to the sole ground for relief alleged in the present . . . [P]etition." (Id. at 2 n.1.)

2

the state improperly relied on the predicate felony convictions alleged in Petitioner's habitual felon indictment to determine his prior record level (see id. at 2-3), a matter different than the sole grounds for relief Petitioner pursues in the Petition here (see Docket Entry 2 at 5). The trial court then denied Petitioner's MAR on the merits (see Docket Entry 8-7 at 2) and, according to Respondent, Petitioner filed a series of three pro se petitions with the North Carolina Court of Appeals seeking review of his second MAR's denial, all three of which that court denied (see Docket Entry 8 at 3).[4]

Petitioner subsequently filed a "Motion in Arrest of Judgment" in the trial court (Docket Entry 8-8) contesting, inter alia, his habitual felon indictment because his predicate conviction of carrying a concealed weapon qualified as only a Class 2 misdemeanor (see id. at 4, 7-8). The trial court denied the motion (see Docket Entry 8-9 at 2-3), and Petitioner filed a pro se petition for writ of certiorari in the North Carolina Court of Appeals seeking review of the trial court's denial (Docket Entry 8-10). The North Carolina Court of Appeals denied that petition (see Docket Entry 8-11 at 2), and Petitioner filed a pro se petition for writ of certiorari in the North Carolina Supreme Court seeking review of the orders entered by the trial court and North Carolina Court of Appeals (Docket Entry 8-12), as well as a motion to appoint counsel, which the North Carolina Supreme Court denied and

---

[4] The record does not contain copies of those three petitions.

3

dismissed as moot, respectively, State v. Gillispie, 372 N.C. 704, 829 S.E.2d 207 (2019).[5]

Petitioner next instituted this action via his Petition. (Docket Entry 2.) Thereafter, Respondent filed the instant Motion and Supporting Brief (Docket Entries 7, 8), and Petitioner responded in opposition (Docket Entry 10).

## II. Facts

On direct appeal, the North Carolina Court of Appeals summarized the trial evidence as follows:

> [Petitioner] and Jane Doe had known each other since around 1994 or 1995 and previously had a consensual sexual relationship. On 16 May 2011, Ms. Doe's neighbor gave Ms. Doe and [Petitioner] a ride to the grocery store to buy food and beer. [Petitioner] and Ms. Doe then returned to her apartment where they drank the beer. Ms. Doe testified that [Petitioner] became angry when he realized that there was no more beer in the refrigerator. He told her that he was going to "f--- [her] in [her] a---" and began "punching" and "smacking" her in the face. Ms. Doe attempted to get away from [Petitioner] by running into the bathroom. She got in the shower to clean the blood off of her face. [Petitioner] followed her into the bathroom, pulled the shower curtain back, and made her take a shower while he watched.
>
> When Ms. Doe finished showering and left the bathroom wearing only a towel, she saw [Petitioner] "come walking towards [her] with three knives, like a butcher knife and two small steak knives." He said, "Don't think I won't do it to you." Ms. Doe ran back into the bathroom and locked the door, but [Petitioner] broke through the door. Once inside the bathroom, [Petitioner] again hit Ms. Doe.
>
> [Petitioner] then put the knives away and took Ms. Doe into the bedroom. [Petitioner] told her to take her towel off and get on the bed. She complied because she was "scared for [her] life." [Petitioner] got cocoa butter and baby oil from the bathroom and rubbed them on his penis. He then started having anal sex with Ms. Doe

---

[5] A copy of that motion to appoint counsel does not appear in the record.

4

against her will. She "told him to stop," that "he was hurting [her]," but he told her to "shut up." Ms. Doe kicked him in the chest to get him off of her, but he pulled her onto the floor and started choking and hitting her. When [Petitioner] was choking her, Ms. Doe was unable to breathe and felt "[l]ike [she] was going to die."

[Petitioner] eventually left the bedroom and Ms. Doe quickly put some clothes on and ran next door to her neighbor's apartment. Ms. Doe had blood on her face and arms, a swollen eye, and a hurt ankle. The neighbor called 911. The neighbor testified that Ms. Doe was "really upset" and "shaking," and said Ms. Doe told her that [Petitioner] had sexually assaulted her, trapped her in the bathroom, and "beat on her." Throughout the evening, the neighbor had heard "a lot of banging" coming from Ms. Doe's apartment.

Rowan County Sheriff's Deputy Timothy Cook responded to the 911 call. He discovered Ms. Doe sitting in front of her neighbor's apartment and complaining that she thought she had a broken ankle. Deputy Cook observed that Ms. Doe had bruises on her body and was very upset. Ms. Doe told Deputy Cook that her boyfriend had beaten her up. Deputy Cook searched Ms. Doe's apartment, but did not find [Petitioner]. Ms. Doe did not tell Deputy Cook that [Petitioner] had sexually assaulted her. Ms. Doe testified that she did not tell Deputy Cook about the sexual assault because she "didn't like that cop" and "[h]e was real rude, like I was faking or something." Deputy Cook called EMS and Ms. Doe was taken to the hospital by ambulance. Ms. Doe was treated for her injuries at the hospital, but testified that she did not tell hospital personnel about the sexual assault because she was embarrassed and ashamed.

When Ms. Doe's mother picked her up from the hospital, she told her mother what had happened, including that [Petitioner] had forced her to have anal sex with him against her will. Ms. Doe and her mother went to the Rowan County Sheriff's Office and met with Deputy J.R. Wietbrock. Ms. Doe told Deputy Wietbrock what had happened, including the sexual assault, and then made a written statement.

Gillespie, 240 N.C. App. at 240-41.

5

### III. Ground for Relief

The Petition raises one ground for habeas relief: "Defective Habitual Felon Indictment thereby Depriving Sentencing Court of Jurisdiction." (Docket Entry 2, ¶ 12 (Ground One) (dashes omitted).) As "[s]upporting facts," Petitioner contends that "[t]he [s]tate in a rush to sentence [ P]etitioner as a habitual felon failed to secure a proper presentment or indictment for conviction," in that "[t]he indictment failed to use the three (3) prior felonies as required by N.C.G.S. 14-7.1 and violated [ P]etitioner's 5th [and] 14th amendment right to due process and a fair sentencing." (Id., ¶ 12(Ground One)(a) (parentheses, quotation marks, and semi-colon omitted).)

### IV. Habeas Standards

The Court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Further, "[b]efore [the] [C]ourt may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court. In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to [this] [C]ourt in a habeas petition. The exhaustion doctrine . . . is now codified at 28 U.S.C. § 2254(b)(1)." O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); see also 28 U.S.C. § 2254(b)(3) ("A State shall not be deemed to

6

have waived the exhaustion requirement . . . unless the State, through counsel, expressly waives the requirement.").[6]

Additionally, this Court must apply a highly deferential standard of review in connection with habeas claims "adjudicated on the merits in State court proceedings," 28 U.S.C. § 2254(d).  More specifically, the Court may not grant relief unless a state court decision on the merits "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States; or . . . was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Id.  To qualify as "contrary to" United States Supreme Court precedent, a state court decision either must arrive at "a conclusion opposite to that reached by [the United States Supreme] Court on a question of law" or "confront[] facts that are materially indistinguishable from a relevant [United States] Supreme Court precedent and arrive[] at a result opposite" to the United States Supreme Court. Williams v. Taylor, 529 U.S. 362, 406 (2000).  A state court decision "involves an unreasonable application" of United States Supreme Court case law "if the state court identifies the correct governing legal rule from [the United States Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407; see also id. at 409–11 (explaining that "unreasonable" does not mean merely "incorrect" or "erroneous").

---

[6] The Court may deny a claim on the merits despite a lack of exhaustion. See 28 U.S.C. § 2254(b)(2).

7

## V. Discussion

Petitioner's sole ground for relief argues that "[t]he [s]tate in a rush to sentence [P]etitioner as a habitual felon failed to secure a proper presentment or indictment for conviction," in that "[t]he indictment failed to use the three (3) prior felonies as required by N.C.G.S. 14-7.1 and violated [P]etitioner's 5th [and] 14th amendment right to due process and a fair sentencing." (Docket Entry 2, ¶ 12 (Ground One)(a).)  More specifically, Petitioner asserts that "the trial court refuse's [sic] to correct and [sic] indictment, where it attempted to use a gun charge, a Class (2) misdemeanor, with another Class (2) misdemeanor to make it a felony." (Docket Entry 10 at 4.)  According to Petitioner, he "was on trial for one of the misdemeanor's [sic], and he was found not guilty on that count, (because no gun was mention [sic] the entire trial.)" (Id.)  Thus, Petitioner argues, "the [s]tate loss [sic] with an attempt to make the gun charge the 'predicate felony' in a 'habitual felon indictment.'" (Id.)  This claim falls short.

To begin, the claim faces a procedural bar.  As Respondent argues, "Petitioner did not raise his claim for relief — that his habitual felon indictment was defective for failure to allege three felonies — in his first [MAR] when he was in a position to do so" (Docket Entry 8 at (citing Docket Entry 8-6 (Petitioner's first MAR lacking any argument that his habitual felon indictment failed to allege three predicate felonies))), but "[r]ather, [he] first raised this claim, among others, in his [subsequently-filed] 'Motion in Arrest of Judgment'" (id. (citing Docket Entry 8-8)).

8

Here, the trial court expressly acknowledged Petitioner's failure to raise the substance of this claim in his first MAR in finding Petitioner's pro se Motion to Arrest Judgment "procedurally barred." (Docket Entry 8-9 at 2.)

This Court may not consider the merits of a collateral claim if a state court, as here, has declined to consider the merits of Petitioner's parallel MAR claim on the basis of "an adequate and independent state procedural rule." Harris v. Reed, 489 U.S. 255, 262 (1989). Such a rule qualifies as "adequate" if the state courts regularly or consistently apply the rule, see Johnson v. Mississippi, 486 U.S. 578, 587 (1988), and qualifies as "independent" if the rule does not "depend[ ] on a federal constitutional ruling," Ake v. Oklahoma, 470 U.S. 68, 75 (1985). The state rule implicitly invoked by the trial court procedurally bars a claim where, "[u]pon a previous [MAR], the defendant was in a position to adequately raise the ground or issue underlying the present motion but did not do so." N.C. Gen. Stat. § 15A-1419(a)(1), absent proof of "[g]ood cause" and "actual prejudice" or "a fundamental miscarriage of justice," N.C. Gen. Stat. § 15A-1419(b). The Fourth Circuit has consistently found that N.C. Gen. Stat. § 15A-1419(a)(1) constitutes an "adequate and independent state-law ground for decision foreclosing federal habeas review," Boyd v. French, 147 F.3d 319, 332 (4th Cir. 1998); see also Ashe v. Styles, 39 F.3d 80, 88 (4th Cir. 1994).

In response, Petitioner argues neither that "good cause" and "actual prejudice" exist under Section 15A-1419(b)(1), nor that

9

"failure to consider [his] claim will result in a fundamental miscarriage of justice" under Section 15A-1419(b)(2). (See Docket Entry 10.) Rather, Petitioner maintains that, "[i]n several recent case's [sic] the N.C. Court of Appeals have said: [t]here will be no bar on meritorious claims when access have [sic] not been abused." (Id. at 6 (citing State v. Millhouse, 262 N.C. App. 374 (table), 2018 WL 5796230 (Nov. 6, 2018) (unpublished), State v. McPhaul, 259 N.C. App. 253 (table), 2018 WL 1801781 (Apr. 17, 2018) (unpublished), and State v. Brooks, 257 N.C. App. 261 (table), 2017 WL 6459437 (Dec. 19, 2017) (unpublished)).) However, those cases lack applicability to the instant matter, as (in all three) the North Carolina Court of Appeals held only that the trial court had erred by ruling that the petitioner's motion for DNA testing procedurally barred other forms of post-conviction motions, and did not address the validity of Section 15A-1419. See Millhouse, 2018 WL 5796230, at *3; McPhaul, 2018 WL 1801781, at *2; Brooks, 2017 WL 6459437, at *1-2. Thus, North Carolina's mandatory post-conviction procedural default statute bars Petitioner's only claim in his Petition.

Furthermore, even if Petitioner could demonstrate cause and prejudice and/or a fundamental miscarriage of justice sufficient to excuse his procedural default, his claim still fails as meritless. Under North Carolina law, "[a]ny person who has been convicted of or pled guilty to three felony offenses in any federal or state court in the United States or combination thereof is declared to be an habitual felon." N.C. Gen. Stat. § 14-7.1 (version in effect on

10

date of offenses, May 16, 2011). Furthermore, state law prohibits (unless a statutory exception applies) "any person [from] willfully and intentionally [] carry[ing] concealed about his [or her] person any pistol or gun," N.C. Gen. Stat. § 14-269(a1) (version in effect on date of offenses, May 16, 2011), and, while that statute categorizes a first conviction of subsection (a1) as a Class 2 misdemeanor, the law deems "[a] second or subsequent offense . . . a <u>Class I felony</u>," N.C. Gen. Stat. § 14-269(c) (version in effect on date of offenses, May 16, 2011) (emphasis added).[7]

Here, Petitioner's habitual felon indictment alleged three predicate felony convictions: "felonious restraint," "carrying [a] concealed gun," and "larceny." (Docket Entry 8-3 at 8 (capitalization omitted).) With regard to Petitioner's prior "carrying [a] concealed gun" conviction, the record demonstrates that, on May 25, 2005, Petitioner entered an <u>Alford</u> plea to the charge (via information) of carrying a concealed weapon (a .22 caliber revolver). (<u>See</u> Docket Entry 8-2 at 4-7.) Significantly, both the information and Petitioner's transcript of plea expressly described the carrying a concealed weapon charge as a <u>Class I felony</u> due to Petitioner's previous conviction of carrying a concealed weapon. (<u>See</u> <u>id.</u> at 5-6, 8.) The record further establishes that, prior to Petitioner's May 2005 conviction for "carrying [a] concealed gun," he had previously been convicted of misdemeanor "carrying [a] concealed weapon" on <u>two</u> prior occasions

---

[7] Effective December 1, 2014, the North Carolina General Assembly amended N.C. Gen. Stat. § 14-269(c) to change the punishment for a second or subsequent offense to a Class H felony. <u>See</u> N.C. Gen. Stat. § 14-269(c) (2014).

11

– on June 12, 1986 (Rowan County case no. 86CR007608), and on March 1, 1995 (Rowan County case no. 94CR011303). (Docket Entry 8-3 at 75 (capitalization omitted).) The trial court thereafter entered a judgment on May 25, 2005, convicting Petitioner of the Class I felony of carrying a concealed weapon. (Docket Entry 8-2 at 2-3.) As that prior conviction constituted a <u>felony</u> under North Carolina law, the trial court did not err by including it as a predicate felony conviction in Petitioner's habitual felon indictment. (<u>See</u> Docket Entry 8-14 at 243 (reflecting statement of Petitioner's trial counsel to the trial court that, "[o]n behalf of [Petitioner], first of all I point out that the second conviction, carrying a concealed weapon, ordinarily is not a felony, but he had a prior conviction that made it a Class I felony")).

Simply put, Petitioner's sole ground for relief fails as a matter of law, due to procedural bar and want of merit.

## VI. Conclusion

Petitioner's claim provides no basis for collateral relief.

**IT IS THEREFORE RECOMMENDED** that Respondent's Motion for Summary Judgment (Docket Entry 7) be granted, that the Petition (Docket Entry 2) be denied, and that Judgment be entered dismissing this action without issuance of a certificate of appealability.

/s/ L. Patrick Auld
**L. Patrick Auld
United States Magistrate Judge**

November 12, 2020